We'll hear argument next in Mooson v. Berryhill, 17-643. Thank you, Your Honor. Thank you. Thank you, Your Honor. Counsel. Good morning, Your Honors. Michael Confusio on behalf of the appellant, Mr. Roosin. I'd like to reserve two minutes of rebuttal, if I could. Okay. It's a very straightforward case, obviously arises from the denial of disability. We ask that the court reverse it on the ground that there's not substantial evidence in the record to support the denial. I really rely on the details of the briefs that we submitted, primarily the first brief I submitted. I guess what I'd like to focus on here, maybe just to take it from a different angle, is the residual functional capacity determination that the administrative law judge made was kind of critical, certainly at least to the final determination that the judge made. He says two things in his RFC analysis that we feel are not supported by any evidence in the record. One is the ALJ says, well, you know, he has no cognitive limitations, and he can work towards daily goals. Those are kind of two of the main things that the ALJ said in his RFC analysis. And yet, if you really look at the record that is contained in the appendix, not only from Dr. Letourneau, who was the treating psychiatrist for more than 15 years, but really all the other record evidence, the Dr. Chaudhry was a psychiatrist, the psychologist Sherry Schwartz, there was a neuropsychological evaluation from Santa Maria, and the PhD evaluation from Langford. All of them talk about difficulty concentrating, lack of cognitive focus, cannot make appropriate decisions, and none of them really, there's no evidence in this record to support the ALJ's conclusion that there's no cognitive limitations. And then the same analysis really goes for the daily, can work towards daily goals. You know, if you really look at the test in terms of, did this. So Dr. Letourneau, is that how you pronounce his name? Yeah. He, in one of his progress notes, says associations are intact, thinking is generally logical, and thought content is appropriate, cognitive functioning is intact, and he is fully oriented. So you tell me, you just told us that there's no evidence, and yet from his own treating psychiatrist, there's evidence of no apparent significant cognitive dysfunction. Well, I think the problem is, again, I think you have to. Did I misread that? No, I don't think you misread it, but I think the problem is that the record has to be looked at as a whole. But this is his treating psychiatrist. It's his treating psychiatrist, but it's treating psychiatrist notes over the course of several years, and that may reflect one particular visit. But the fact is, when you have a disabling depression, as some of the cases have noted before, you can't just really look in isolation at one particular note from a particular visit and say, well, that's reflective of the man's overall functioning. In 2013, Dr. Letourneau, the same treating psychiatrist, has a note where he encourages your client to get purpose through a job, to get a job. Is that all? But we should look at more than that as well. Yeah. I mean, again, I don't think that ñ I think this is really what it comes down to. If you really look at what the ALJ's decision was, he went through the medical evidence, and he essentially discounted it. And then really on page 11, he says he notes that the claimant was able to provide investment advice to university committees, watch documentaries, he was able to negotiate the sale of his business, which the record shows he had sold, do household repairs for his mother. The problem is, where is the psychiatric or psychological opinion in this record that shows that those are significant factors in assessing the disability test? In other words, don't you need a psychiatrist to say that claimant's ability to do those things that I just listed shows he has the, quote, ability to do physical and mental work activities on a sustained basis? And when it's a mental health impairment that we're talking about, I think that kind of psychiatric evidence is critical in the case. There isn't any psychiatric or psychological opinion that says that he's not impaired in that way. All of it says that he is. And although some treatment records may reflect that he has a certain peak, perhaps, on a particular visit with a psychiatrist, Dr. Letourneau's opinion that he has these cognitive limitations and is disabled is consistent with the actual opinion of all the other doctors who looked at him in the case. There's no doctor in the record that says, oh, this man can work. None. The only thing that the ALJ did was pick out things, for example, what your honor may be highlighted, or pick out things like I just listed. Well, he watches documentaries or can do repairs at his mother's home. Unless you have a psychiatrist to explain the significance of those things, I, as a layperson, and the same thing for the ALJ. Didn't Dr. Kamen say that he could work? Dr. Kamen, I saw that in the government's brief. There's nothing in the ALJ's decision that even cites Dr. Kamen as far as I could say, as far as I could see in his opinion. Nothing. There's no reference to Dr. Kamen at all. And in any event, even if you took whatever Dr. Kamen said, it's completely outweighed by all the other opinions in the case. And again, it has to be substantial evidence to support it. So, you know, I really think that it, I think the most important thing for the court to look at is what actually is in the record psychiatrically that supports the ALJ's ultimate conclusion that he has no cognitive limitations and can work towards daily goals, which is really the basis for finding that he has no disability. There's nothing in there. There's no psychiatric opinion that counters Letourneau. And all the psychological and psychiatric opinions are consistent with Letourneau's ultimate conclusion that the man is disabled. And the law says that the ALJ can substitute his opinion for that of the medical practitioner. You know, if there was a countering psychiatric opinion in the record . . . Hello? Judge Hall. Sorry, Your Honor. No, no problem at all. I know this is not the optimum way to try to conduct these arguments, but did you make this argument about the need for an independent psychiatrist before the district court? I wasn't actually the attorney, but as far as I could see in the record, no. I don't think they said, hey, we need an independent psychiatrist there. So perhaps that argument is subject to a waiver analysis. But I think the overall central point is even just looking at what was actually in the record. In other words, if the ALJ said, okay, he has no cognitive limitations, I mean, on what medical or psychiatric evidence does he base that conclusion? There isn't any psychiatrist who says the man is not disabled from a severe disabling depression standpoint. If there was something in the record that said that, then I think I would have a completely losing argument. But the fact that that evidence is absent from the record shows that the ALJ's decision to go the other way, essentially, and reject Dr. Letourneau's opinions is not supported by the substantial evidence standard. And that's really the crux of my argument here before the court. And the crux of your argument, just so I'm understanding it, even though there is evidence of his physical abilities as we have already discussed, is that that ability to engage in certain physical activities does not address the mental problems that he has. Exactly. And in order to practically assess that evidence, you need the psychiatrist to say, well, given that he can do these things, I find he can do the following on a sustained basis, which is really the test for disability. I don't think the lay person But your argument is that there isn't any of that evidence there. And absent that evidence, then the ALJ had to go with Dr. Letourneau's opinion. Precisely, Your Honor. Okay. Thank you. Thank you very much, Your Honors. We reserve just some time for rebuttal. We'll hear from Ms. Myers. May it please the Court. Lauren Myers, representing the Acting Commissioner of Social Security. Rusin has simply not Ms. Myers, could you address the question that I just finished up with, with Mr. Confucione? Yes, about whether there was psychiatric opinion evidence to support the RFC? Yeah, whether it was needed and whether the absence of that poses a problem for the Secretary in this case. The Commissioner maintains that Dr. Schwartz's opinion, the Consultative Examiner, does support the RFC. Dr. Schwartz opined that Rusin could maintain a regular schedule, could maintain attention and concentration, could follow directions, could learn new tasks, and could complete simple and complex tasks. Moreover, the treatment notes from Dr. Letourneau are consistent She says the results of the present evaluation appear to be consistent with problems, and this may significantly interfere with the claimant's ability to function on a daily basis. That is correct, Your Honor. However, the RFC does limit Rusin to no supervision of others' work, occasional decision-making, working toward daily or monthly goals, and an additional three less-than-five-minute breaks per day. The Commissioner agrees that Rusin can no longer perform his past relevant work as a CEO and that he has lost some of those abilities as a result of his depression. However, when considering the treatment notes, even from Dr. Letourneau, that included logical thoughts, intact cognitive functioning, fair to intact judgment, and normal attention consistently, there was evidence that supported He says major depressive disorder, severe. Correct. He does have major depressive disorder. The ALJ found that at Step 2. However, the ALJ appropriately found, by weighing the treatment notes, the opinion evidence, and Rusin's activities of daily living, which included some high functioning and giving advice on an endowment at Harvard, remaining on the president's circle at the Rochester Institute of Technology, occasionally doing home repairs for his mother, and that his treatment notes consistently indicated logical thoughts. No, I appreciate that. I'm just focused on Dr. Schwartz because you mentioned Dr. Schwartz. And, you know, who am I to say, but if you look at Dr. Schwartz's evaluation, sure, she says he can get along well with others, he's able to drive, he can do laundry and shop, but the ultimate diagnosis is he's got a significant problem. He does have a severe impairment of depression, and the ALJ found that at Step 2. However, the ALJ went on to find in the RFC that Klayment remained capable of performing a range of work at all exertional levels. We believe that it correctly incorporates the severe depression. In particular, the commissioner maintains that providing Dr. Letourneau's opinion with little weight was supported by the record and that the ALJ appropriately considered the regulations when providing that opinion with little weight. The ALJ did correctly consider that Dr. Letourneau had a long treatment history with Rucin. However, Letourneau's own notes indicated that Rucin consistently had normal attention, had fair to intact insight and judgment, had appropriate thought content, and at one point he even encouraged Rucin to seek purpose through getting a job. Moreover, the treatment notes from other treating sources, including Dr. Chaudhry and Dr. Malmott, are completely at odds with Dr. Letourneau's very restrictive opinion. Also, as noted before, Dr. Schwartz's opinion indicated that he could maintain a regular schedule, maintain attention and concentration, and complete simple and complex tasks. This would entail some job far from the job of the CEO. Yes, that's correct, Your Honor. Under the regulations, what the ALJ has to do is not only consider whether a claimant can do his past relevant work, in this case a CEO, but also whether a claimant can perform work that exists in significant numbers in the national economy. I thumbed through the record, but I wasn't able to find it. Just give me some background help. If I'm working and I go out on complete disability, my monthly check is pegged to what? How much will my check be? How much will your check be if you were given disability benefits? Yeah. I'm not actually sure of the amount per month. Is it connected to the former salary or something else? I don't believe it's connected to the former salary, and it is different based on whether a person is applying for Title II disability or Title XVI. In this case, it's only Title II disability insurance benefits. What is Title II disability? Disability insurance benefits. Title II is for people who have performed quarters of work in the past. Social security, right? Yes. It's in contrast with supplemental security income, which is for people who have earned below a certain income threshold. But you can't put a number on either of those? I don't know the exact number. I believe it may be different with every claimant. I'm not one who does the calculation of benefits. Fair enough. Thank you. Anything else? I would just like to wrap up by saying that in this situation, the ALJ appropriately considered the record as a whole, as he is tasked to do when determining the RFC, and that it appropriately took into account Rusan's severe depression and that Rusan has not carried his burden of showing that any additional limitations should have been included in that RFC. Thank you. Thank you. Counsel? Unless the Court has any further questions of me, I think we've discussed the issue sufficiently. Thank you very much. Thank you, Your Honor. Any questions, Judge Hall? No. Thank you, Judge Leahy. Thank you. We'll reserve the decision. Thank you both.